NICKEL *v.* NICKEL

1. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW.

The Court of Appeals reviews chancery cases *de novo;* however, this does not preclude the appellate court from giving great weight to the trial court's findings of fact.

2. DOMICILE—FINDING OF FACT—EVIDENCE.

Trial court's finding of fact that defendant intended to change his domicile to Nevada and that a Nevada divorce he obtained is entitled to receive full faith and credit by Michigan courts is proper where the evidence showed that the defendant severed his employment at a Detroit hospital, that he wished to pursue a medical specialty in cardiology, that an opportunity to do so presented itself in Nevada, that he obtained a temporary and later a permanent license to practice medicine in Nevada and that there was the possibility that he would be on the faculty of a contemplated medical school in Nevada.

3. DOMICILE—ABANDONMENT—TEMPORARY ABANDONMENT—EVIDENCE.

Return to a previous domicile does not necessarily negate a prior intention to abandon that domicile and permanently relocate elsewhere, so that where defendant severed his employment at a Detroit hospital and moved to Nevada to a position which would better enable him to develop his medical specialty, filed for and received a Nevada divorce, remarried shortly thereafter and returned to Michigan for a short period of time because he found his work in Nevada was not what he had expected, the trial court's finding that his conduct did not show an intention to resume a temporarily abandoned domicile was proper.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 822.
[2] 24 Am Jur 2d, Divorce and Separation §§ 251–255, 387.
  What constitutes residence or domicil within state for purpose of jurisdiction in divorce. 159 ALR 505.
[2, 3] 25 Am Jur 2d, Domicil §§ 27, 97.
  Nature and location of one's business or calling as element in determining domicil in divorce cases. 36 ALR2d 756.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 October 6, 1970, at Detroit. (Docket No. 6654.)  Decided December 9, 1970.

Complaint by Violet Mae Nickel against Stewart Newman Nickel for a declaratory judgment determining a Nevada decree of divorce which the defendant obtained to be void.  Judgment for defendant.  Plaintiff appeals.  Affirmed.

*Berry, Hopson, Francis & Mack* (*Robert W. Kefgen* and *Michael H. Feiler,* of counsel) for plaintiff.

Stewart N. Nickel, *in propria persona.*

Before: LESINSKI, C. J., and BRONSON and ENGEL,* JJ.

ENGEL, J.  Plaintiff Violet Mae Nickel filed a complaint in Wayne County Circuit Court seeking a declaratory judgment determining void a decree of divorce which the defendant, Stewart Newman Nickel, had obtained in Reno, Nevada, on February 4, 1965.  She further sought a determination that the marriage between them was still in full force and effect.  Following trial a judgment was entered September 23, 1969, in favor of defendant determining that the Nevada decree of divorce was to be given full faith and credit in Michigan.  From that judgment, and from a subsequent order denying her motion for a new trial, plaintiff appeals.

The parties hereto were married in Detroit on June 20, 1953, but have not cohabited together since March 17, 1961.  There were no children.  Defendant husband commenced a divorce action in Wayne

---

* Circuit judge, sitting on the Court of Appeals by assignment.

County Circuit Court on June 19, 1961. On September 25, 1964, following trial, a judgment was entered dismissing the husband's complaint for divorce as well as a counterclaim for separate maintenance filed by the wife, plaintiff here. That judgment was affirmed on appeal in *Nickel* v. *Nickel* (1967), 9 Mich App 191.

Although the instant action is one for declaratory judgment, still the subject matter is equitable in nature and is thus subject to review *de novo* in this Court. That a matter is subject to *de novo* review, however, does not mean that the appellate tribunal is precluded from giving great weight to the trial court's findings of fact.

"This is another situation in which we feel justified to repeat that although the Court of Appeals hears a divorce case *de novo* on the record, the trial court has the distinct advantage over this Court of seeing and hearing the parties and the witnesses, observing their demeanor and attitudes, and is in a better position to weigh the evidence and determine the credibility thereof. This Court will not substitute its judgment for that of the trial judge, without showing of abuse of discretion. The finding made by him, while not controlling, is entitled to great respect." *Heckelman* v. *Heckelman* (1966), 3 Mich App 159, 164.

In urging reversal appellant relies heavily upon *Henry* v. *Henry* (1960), 362 Mich 85, the substance of her first ground for appeal being that the facts here are so similar to those in the *Henry* case that no meaningful distinction can be drawn. We note at the outset that in *Henry* v. *Henry, supra,* the Supreme Court at page 98 of its opinion reaffirmed "the reliance we customarily place on the hearing judge's findings on disputed facts" in *de novo* review of chancery actions.

It is indeed true that there are, as claimed by appellant, many similarities between the facts in this case and those in *Henry* v. *Henry, supra*. The husband in each case was married in Michigan and had family roots in this state. Each sought divorce in Michigan courts and failed. Both husbands left Michigan shortly after failure to obtain a Michigan divorce and filed for Nevada divorces quickly after residency requirements were satisfied, Mr. Henry waiting 63 days while Dr. Nickel waited only two days longer than the 42 days minimum. Both defendants remarried soon after their judgment and decrees of divorce were entered in Nevada. Both registered to vote in Nevada and Dr. Nickel actually voted in local Nevada elections. Both opened local bank accounts while at the same time maintaining Michigan bank accounts. There are other similarities as well. Why, then, did the same trial judge who determined an absence of Nevada domicile in *Henry* v. *Henry, supra,* reach an opposite conclusion here?

The answer lies in a careful review of the record of the trial, particularly as it relates to Dr. Nickel's employment history. We quote with approval from page 100 of *Henry* v. *Henry, supra,*

"The location of a person's main business is not necessarily controlling as to his domicile. But when, as here, he has always resided in the state where his business was located until marital difficulties arose, and when, during them, he continues his business without interruption in the state of original domicile, this fact becomes a significant one in indicating an actual intention to maintain or desert that domicile."

Upon disputed evidence, the trial judge found that Dr. Nickel severed his employment as a physician at Henry Ford Hospital in Michigan when he went

to Nevada.  Dr. Nickel had logical reasons for desiring to leave both his employment and to leave Michigan, entirely apart from the fact that he desired a divorce which had been denied him in this state.  He was dissatisfied with the nature of his work at Ford Hospital, which consisted mainly of physical examinations.  Specifically, he wanted to pursue cardiology, and this was not readily available to him at Ford.  He had investigated employment in Indiana, Illinois and Arizona, but a discussion with the Nevada Governor of the American College of Physicians and Surgeons convinced him that the medical picture was bright in Nevada, and employment was immediately available.

Promptly upon arriving in Reno in early November, 1964, Dr. Nickel secured a temporary license to practice medicine in Nevada and obtained a position as head of the critical care unit of the Nevada State Mental Hospital.  He subsequently obtained a permanent license to practice medicine as soon as he was able to appear before the Nevada state medical examiners.  While his employment was not exactly what he wanted, still, during off hours he found satisfaction in doing research with a cardiac pathologist on an internal heart pacemaker.  At the same time, he was encouraged by reports that a medical school was to be built at the University of Nevada and that his research associate might be made dean.  The prospect of being on the faculty was highly attractive to him.

From the foregoing facts, and others, the trial judge concluded that when he left Michigan, Dr. Nickel intended to establish domicile in Nevada permanently or for an indefinite or unlimited length of time.  We agree.  While it is true that Dr. Nickel returned to Michigan following his remarriage on July 27, 1965, and a short California honeymoon,

we accept the trial judge's finding that his leaving was explainable and credible from his testimony. He found his work was not what he expected and more importantly, the development of the medical school had become bogged down in politics.

Although Dr. Nickel returned for a while to Michigan, a review of his actions at that time does not show an intention to resume a temporarily abandoned domicile. He eventually settled in Cleveland, Ohio, in February, 1966, and the permanence of his residence thereafter was not disputed.

Appellant strongly urges that intention in determining domicile must rest upon something more than mere subjective findings. We agree, but point to the nine pages of facts which the trial judge found in support of his conclusions.

Appellant further urges that "no reasonable person could conclude other than Dr. Nickel went to Nevada for the purpose of obtaining a divorce from his wife in Michigan". It is probably true that Dr. Nickel's initial decision was prompted in good part by failure of his divorce action in Michigan and a knowledge of the ease of Nevada divorce law. The important question, however, is whether, in going to Nevada, he did so intending permanent residence there. *Henry* v. *Henry, supra,* at p 95. The trial judge concluded from the facts that such an intent existed and we agree. The Nevada decree of divorce is entitled to full faith and credit in Michigan under US Const, art 4, § 1.

In addition, the foregoing discussion should sufficiently answer appellant's claim that the judgment of the trial court was against the great weight of the evidence.

Lastly, appellant claims that it was error for the trial judge to deny a motion for a new trial on the

basis of newly discovered evidence. GCR 1963, 527.1 provides that a new trial may be granted on the grounds of "(6) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at the trial". Michigan case law stands for the proposition that before newly discovered evidence warrants a new trial, "the moving party must show (1) that the evidence itself and not merely its materiality is newly discovered; (2) that it is not merely cumulative; (3) that it is such as renders a different result probable on retrial; and (4) that the party could not with reasonable diligence have discovered and produced it at trial". *Hoven* v. *Hoven* (1967), 9 Mich App 168, 173. See also *Canfield* v. *City of Jackson* (1897), 112 Mich 120; *Hainault* v. *Vincent* (1961), 365 Mich 370.

The proffered evidence in this case, according to appellant, consists of "a letter from a Nevada church to which Dr. Nickel was said to have belonged stating that he had not joined; of a letter from a Dr. Alvarez stating that Dr. Nickel had told him before leaving Henry Ford Hospital that he was going to Reno to get a divorce from his first wife; and consisting of a certain brochure which went to show that the professed Nevada medical school was never anything near a reality". This proffered evidence fails to satisfy each of the tests quoted above. Dr. Nickel never in fact stated that he joined a church in Nevada. He merely stated he frequently attended the church. The letter from Dr. Alvarez would be hearsay and the substance of it, if admitted, would be of only slight materiality. The brochure, likewise, would be hearsay. There is no showing that this evidence could not with reasonable diligence have been discovered and produced at trial. Neither

can it be said that its introduction would render a different result probable on retrial.

Affirmed. Costs to appellee.

All concurred.